## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JEWELL EVETTE JONES, et al., | : | Case No. 3:18-cv-00037 |
| | : | |
| Plaintiffs, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| MONTGOMERY COUNTY | : | |
| DEPARTMENT OF JOB AND | : | |
| FAMILY SERVICES—CHILDREN | : | |
| SERVICES DIVISION, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.    Introduction

Plaintiff Jewell Evette Jones is a former probationary employee of the
Montgomery County, Ohio Department of Job and Family Services (DJFS).  She brings
this case *pro se* claiming that she and others endured a hostile and abusive work
environment during her employment with DJFS.  She asserts that Defendant Jane Hay, "a
white woman," unlawfully interfered with her and other black employees' job
performance by training them "to fail the probationary period …."  (Doc. #2, ¶s 12, 15).
She further alleges that Defendant Hay "permeated the entire workplace at the Division
[DJFS] with discriminatory intimidation, ridicule, and insult and so heavily polluted the
environment with harassment, intimidation, racial remarks and discriminatory acts and

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

omission, as to destroy completely the emotional and psychological stability of the entire minority group [of] workers within that Division …." *Id.* at ¶13. She also maintains that Hay attempted to coverup the hostile and abusive work environment and retaliated against her (Plaintiff) when she reported Hay's discriminatory conduct.

The case is before the Court upon many disputed Motions, the most potentially dispositive being the Montgomery County Defendants' Motion to Dismiss under Fed. R. 12(b)(6) (Doc. #12), Defendant Jane Hay's Motion to Dismiss (Doc. #13), and Plaintiff's Motion to Amend Complaint (Doc. # 20).

## II.    Plaintiff Jewell Evette Jones's Complaint[2]

When assessing Plaintiff's *pro se* Complaint under Fed. R. Civ. P. 12(b)(6), the Court accepts her allegations as true and liberally construes her Complaint in her favor. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Doing so discloses the following.

Plaintiff's fifty-six page Complaint explains early on, "This case involves an unlawful agreement between the defendants within the … [DJFS], (Plaintiff's former place of employment), to conceal and cover up a hostile work environment with that department caused by Defendant Jane Hay, using her position as President of the (PGO [Professional Guild of Ohio]) Union and her knowledge of Ohio's Statewide Child Welfare Database System (SACWIS), to harass, intimidate, curse, belittle and make racist statements to the employees beneath her, subjecting Plaintiff and her fellow

---

[2] See *Infra* §IV(G) for an explanation of why Edward Levi Jones is not a party to this case.

employees to the deprivation of rights, privileges and immunities secured by the Constitution of the United States." (Doc. #2, *PageID* #94).

DJFS hired Plaintiff on May 16, 2016 as a probationary employee in the position of Secretary 1 within the Children Services Division of DJFS. (Doc. #2, ¶27). On her first day of employment, "she was pulled to the side by a black MCCS [apparently, Montgomery County Children Services] supervisor (Tarina Mason), who warned her to watch out for Jane Hay…. [She] was a 'backstabber' and … was rude and had a habit of talking crazy to her coworkers." *Id*. at ¶ 29. Defendant Deansai Myers, Human Resources Coordinator, also spoke with Plaintiff on her first day of work. Plaintiff alleges, "[Myers] came by the Plaintiff's desk and told her to beware of Jane Hay and that if Plaintiff had any problems with Jane Hay, … Plaintiff should let her know." *Id.* at ¶ 32 (emphasis omitted).

Two days later, Plaintiff met Defendant Sandra Mundy, a supervisor of Mandated Services. Defendant Mundy informed Plaintiff that Jane Hay would be Plaintiff's trainer and that Hay would be training Plaintiff to acquire the skills required for Court Review Specialist, Rank 1. Defendant Mundy also told Plaintiff that she "was hired because [she] is ex-military, a veteran, who should be able to handle Jane." *Id*. at ¶s 34-35.

Plaintiff alleges that Hay is a white woman, President of the Union (Professional Guild of Ohio), and a Court Review Specialist for Montgomery County DJFS.

On Plaintiff's first day of job training, Defendant Hay explained how to get along and work together with her (Defendant Hay). "At that time, Defendant … Hay informed Plaintiff to, *stay away from the black girls* in the building because they (the black girls)

did not like Defendant Hay and she did not want Plaintiff to get involved with them and did not want them in her area." *Id*. at ¶s 40-41 (italics in original). Hay also instructed Plaintiff not to talk with Diane Williams, a black employee who did not like Hay. *Id*. at ¶42.

Plaintiff's work environment became progressively worse during the close of 2017. *Id.* at ¶49. "[She] noticed that when she returned from lunch, Defendant Hay would run to Plaintiff's cubicle and sniff Plaintiff, and make Plaintiff take off her sunglasses." *Id.* On one occasion, Hay asked Plaintiff why her eyes were red. When Plaintiff told Hay that she had allergies, Hay "began to tell Plaintiff what would happen if a person were presumed to be high at work and did so in a way that Plaintiff perceived it to be a threat." *Id*.

During Plaintiff's training, if Plaintiff asked Hay questions, Hay would loudly shout belittling remarks at her. *Id.* at ¶50. Hay also instructed Plaintiff not to help people who walked up to the desk asking for help because those employees should instead send an email asking for help. But, Defendant Hay allowed white co-employees to walk up to the desk and Hay would help them. Plaintiff began to notice a pattern that "when [black] co-workers … would ask … for assistance[,] Defendant Hay would run them off and tell them that the Plaintiff was in training and they needed to send her (Jane Hay) an email to get help." *Id*. at ¶51.

These circumstances caused Plaintiff severe anxiety. Plaintiff knew "of Defendant Hay's power in the department and division…." *Id*. at ¶52. Plaintiff felt dependent on Hay, and she was intimidated when Hay asked her to do something. *Id*. Plaintiff began

suffering from "skin […] peeling from her hands and a strange red rash." *Id.* at ¶ 53. She reported these problems to Defendant Mundy and showed Defendant Mundy her alleged stress-related-physical symptoms. *Id.*

A reprieve from Plaintiff's training and work with Hay came in July 2017, when Hay went on medical leave. During Hay's absence, Plaintiff initially thought that only Hay was capable of handling certain matters or issues specific to their operating system, SACWIS. *Id.* at PID 20-21, ¶¶ 56-57. At some point, however, while Hay was on medical leave Plaintiff realized that she knew enough to make required entries into the SACWIS system without causing a systemic error. *Id.* at ¶58. Plaintiff also learned that most of the alleged errors in Plaintiff's work that Hay had reported "were typographical errors that had nothing to do with a systematic shutdown, or an error that affected the efficiency of the office or division but had not effect on her knowledge of the SACWIS system for which Plaintiff was really hired." *Id.* at ¶59.

Plaintiff asserts that her own work performance improved while Hay was absent on medical leave. *Id.* at ¶60. Plaintiff's typographical errors significantly decreased in Hay's absence. Plaintiff informed Defendant Mundy that the reason her typographic errors had been so high "was because of the distractions and events caused by Defendant Hay during the work-week in the small cubicles where Plaintiff worked. Plaintiff's rash began to clear up during that time…, where Plaintiff was able to work without being under the extreme stress when in the presence of Defendant Hay." *Id.* at ¶60.

Additionally, before Hay went on medical leave, she failed to tell Plaintiff how to log into, and add data to, a system designed to track Plaintiff's work completion. When

Defendant Jewell, Assistant Director of DJFS, looked at the system to check on Plaintiff's progress, there was nothing to show how much work Plaintiff had done. This prevented Defendant Jewell from tracking Plaintiff's progress and work performance. *Id*. at ¶56.

While Hays was on medical leave, "the whole work-place atmosphere changed and it seemed more relaxed and cheerful…." *Id*. at ¶58.

Upon Defendant Hay's return to work, "Plaintiff's probationary period was extended and under Defendant Hay and Plaintiff's rash returned immediately." *Id*. at ¶63. This again caused Plaintiff extreme emotional distress. "The distress became so extreme that Plaintiff sought treatment from the Veteran's Medical Staff to deal with the stress [she] was under as a result of the work environment, while [she] was attempting to make it through her probationary period and would no longer have to be under Defendant Hay and no longer considered a trainee, but a full-time employee of the Department, where Plaintiff planned to retire." *Id*. at ¶62.

After Hay returned to work, she reviewed the work three employees had done by making entries into the SACWIS system during her absence. Hay made "small, subtle marks" on white employee Jane Kidwell's paperwork. But, when Hay reviewed Plaintiff's work, "Hay made big bright marks on the paper with a hot pink marker." *Id*. at ¶66. Hay made even bigger marks on Clarissa Gresham's work, and she told Defendant Mundy that she would need to correct all of Gresham's work. Gresham was a black employee. *Id*.

As far as Hay's review of Plaintiff's errors with SACWIS, Plaintiff realized that it was Hay who caused—and in some instances created—the errors. *Id*. at ¶72. Hays did not train Plaintiff "how entries on the different documents were to be made and why." *Id*. at ¶73. She instead would give Plaintiff conflicting instructions about how make entries on certain documents. When Plaintiff followed Hay's instructions to input information from complaints and motions into SACWIS, "Defendant would tell Plaintiff to make the entry one way, then mark it wrong on the document when Plaintiff would give it back to Defendant Hay for review. Jane Hay would then give the document to Mundy [again, she was a supervisor of Mandated Services] who reviewed it and returned it to … Plaintiff with a note that said either Mundy was disappointed in all the errors or that … Plaintiff was improving." *Id*. at ¶77. The cycle would then continue. Plaintiff would re-enter information as Hay instructed, but Hay would again mark it wrong and give it to Mundy, who returned it to Plaintiff to correct.

Plaintiff's Complaint further details efforts by Hay to train her incorrectly about entering information into SACWIS. "When Plaintiff would ask a question to Defendant Hay…, Defendant Hay would yell 'I told you three times how to do that' but never was Plaintiff told why it must be done that way." *Id*. at ¶87. Plaintiff characterizes Hay's conduct as "obnoxious and loud." *Id*. at ¶88.

In November 2016, Plaintiff told Defendant Mundy that she was teaching herself the SACWIS system and that she had started creating an instruction manual on how to make entries into the SACWIS system "because Defendant Hay was not giving her pertinent information on how entries were supposed to be made into the system." *Id*. at

¶89.  "Defendant Mundy then began to express disdain towards Plaintiff saying that [she] 'was paying too much attention to what Jane was doing, instead of concentrating on how to master the work that needed to be done."  *Id*. at ¶91.

In December 2016, Defendant Hay told Mundy that Plaintiff was making too many errors "and that she did not think that Plaintiff could grasp the work."  *Id*. at ¶92. Around this same time, Plaintiff told Mundy that Hay was sabotaging her work by changing it.  When Plaintiff gave Mundy documents that exposed Hay's sabotage, Mundy lacked the requisite knowledge of the SACWIS system to understand what Plaintiff was trying to show her.  *Id*. at ¶97.  Defendant Hay told Mundy that she had not changed Plaintiff's work.  Mundy eventually accepted Defendant Hay's "excuses and explanations and told Plaintiff that she was worrying too much about Defendant Hay and not concentrating on her work."  *Id*. at ¶102.

Defendant Hay would not allow Plaintiff to make it through her probationary period.  "As far as Defendant Hay was concerned, there was only enough work for two individuals in that division in the position of Court Review Specialist, Rank 1, and Plaintiff would not be one of those individuals."  *Id*. at ¶114.  "In January 2017, Plaintiff discovered that Defendant Hay had [done] the same exact thing to two other black females … training on SACWIS system.  One quit and the other was terminated…."  *Id*. at ¶115.

At one point, "Defendant Hay said that because she was not invited to … the social functions that the black women employees would have throughout the year, that she (Defendant Hay) would not do anything to help any of (those heifers)."  *Id*. at ¶100.

Plaintiff went to various people at DJFS for assistance with the problems between herself and Defendant Hay. The people with whom Plaintiff spoke, including Defendant Mundy, did not help her.

Plaintiff's last day of employment was in the third week of January 2017. She met with various people in Human Resources. Before she was allowed to meet with Debra Robinson, a Union representative, Plaintiff was escorted back to her work area and told to gather her belongings. She was not allowed to keep the work she had developed to help her make entries into SACWIS. She was placed on administrative leave with pay, effective immediately. *Id.* at ¶¶ 136-142.

Plaintiff's Complaint advances three causes of action: (1) intentional employment discrimination in violation of 42 U.S.C. § 1981a; (2) violations of 42 U.S.C. § 1983, including conspiracy to retaliate against Plaintiff for reporting Hay's conduct and the "termination of [her] employment to conceal and cover up the racial undertones and abuses that were caused by the President of the Union, Jane Hay…." (Doc. #2, ¶154); and (3) intentional infliction of emotional distress. She seeks, in part, compensatory damages, and two million dollars in punitive damages against DJFA.

Plaintiff also asserts in her first cause of action, "defendants sued in their individual capacities are liable under Section 1981 …." *Id*. at ¶ 152. She asserts in her second cause of action, defendants sued in their official capacities are liable under Section 1983 …." *Id*. at ¶156.

### III.    Rule 12(b)(6) Motions

A complaint is subject to dismissal under Rule (12)(b)(6) when it "lacks 'sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Brent v. Wayne Cnty. Dep't of Human Services*, 901 F.3d 656, 675-76 (6th Cir. 2018) (quoting *Marie v. Am. Red Cross*, 771 F.3d 344, 361 (6th Cir. 2014) (other citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[C]onclusory legal allegations…," *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013), are insufficient, and "'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 555 (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 557 (citation omitted). A complaint suffices when its factual allegations nudge the legal "'claims across the line from conceivable to plausible ….'" *Lutz,* 717 F.3d at 464 (citations omitted).

"[*Pro se*] Complaints are liberally construed and are held to less stringent standards than the formal pleadings prepared by attorneys." *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012) (citation omitted).

## IV.    Discussion

## A.    <u>Procedural Posture</u>

Plaintiff has not filed a Memorandum in Opposition to the pending 12(b)(6) Motions. This, however, is not presently fatal to her Complaint because she is proceeding *pro se* and the case currently presents unusual circumstances.

Although Plaintiff has not filed a Memorandum in Opposition, her Response to Defendants' Motion to Stay Discovery argues, in part, that she "states a claim" under 42 U.S.C. § 1983. (Doc. #18, *PageID* #394). She also contends in her Response:

> Plaintiff was, at the least, denied due process during the termination of her career and, in fact, disabled because of the hostile work environment she was subjected to by the defendants and the subsequent retaliation against her for reporting the causes of the hostile work environment to her immediate supervisors. The facts alleged state a clear conspiracy—an agreement to do a lawful act in and unlawful manner—and as such are enough to survive a challenge in 42 U.S.C. section 1983 claim.

*Id*. at 374.

Plaintiff acknowledges in her Motion to Amend Pleadings and Legal Claims that "Defendant is [sic] correct" when their counsel informed her that her research does not "address the deficiencies raised in Plaintiff's Complaint by the Defendants." (Doc. #20, *PageID* #427).

"[W]hen the pleadings are filed by *pro se* plaintiffs, the court may consider additional, supporting documents which either serve to elaborate on a complaint or amend the initial filing." *Tolliver v. Noble*, __F. App'x__, 2018 WL 4944991, at *8 (6th Cir. 2018) (citing, and parenthetically explaining, *Brown v. Matauszak*, 415 F. App'x 608, 613-14 (6th Cir. 2011) (determining that although the plaintiff's response to the defendant's motion to dismiss did not provide sufficient factual support, the district court should have granted plaintiff leave to amend based on the allegations contained in his motion for relief from judgment in the plaintiff's separate state-court case)) (other citations omitted).

Because Plaintiff's Response elaborates somewhat on the claims she raises in her

Complaint, and because leave to amend a pleading is freely given as justice so requires, *see* Fed. R. Civ. P. 15(a)(2), it is presently appropriate to consider her Response and Motion to Amend Pleadings when ruling on Defendants' pending Rule 12(b)(6) Motions. *See id*. (and cases cited therein).

## B.     Defendant DJFS

Defendants contend that the Montgomery County DJFS should be dismissed as a party in this case because it is *sui juris*.  They are correct.

The Montgomery County DJFS is a branch of the Montgomery County government and lacks the capacity to be sued (*i.e.,* is not *sui juris*).  *See Arsan v. Keller*, 3:17cv121, 2018 WL 635894, at *4 (S.D. Ohio, 2018), *report and recommendation adopted*, 2018 WL 3933706 (S.D. Ohio, 2018) (Rice, D.J.); *see also Adams v. Montgomery Cnty. Children's Servs.*, No 3:15cv127, 2015 WL 4638872, at *3 (S.D. Ohio Aug. 4, 2015) *report and recommendation adopted*, 2016 WL 224096 (S.D. Ohio Jan. 19, 2016) (Rose, D.J.) (citing *Wilson v. Trumbull Cnty. Dep't of Job & Family Servs.*, No. 4:12cv2163, 2013 WL 5820276, at *3 (N.D. Ohio Oct. 29, 2013) (and cases cited therein).[3]

Accordingly, dismissal of Montgomery County DJFS as a party in this case is warranted.

---

[3] "Although state [Ohio] law prescribes a range of duties to the county departments, "'[t]he powers and duties of a county department of job and family services are, and shall be exercised and performed, under the control and direction of the board of county commissioners." *Lowe v. Hamilton County Dept. of Job & Family Services*, 610 F.3d 321, 329 (6th Cir. 2010) (quoting, in part, Ohio Rev. Code § 329.04(B)).

**C.**     __42 U.S.C. § 1981a__

Plaintiff asserts in her 1st cause of action that Defendants discriminated against her by acting "in concerted participation in an agreement to conceal and cover up a hostile work environment … caused by Defendant Jane Hay, who has and continues to utilize her position as President of the [Professional Guild of Ohio] Union and her knowledge of Ohio's … SACWIS, to have free reign to harass, intimidate, curse, belittle and make racist statements to the employees beneath her, subjecting Plaintiff and fellow employees …" in violation of the Constitution and laws of the United States."  (Doc. #2, ¶150).

Defendants contend that Plaintiff's § 1981 claim fails as a matter of law because this statute does not create a substantive right or cause of action.

"'[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'"  *McCormick v. Miami University*, 693 F.3d 654, 660 (6th Cir. 2012) (quoting *Arendale v. City of Memphis,* 519 F.3d 587, 598–99 (6th Cir. 2008)); *see Grinter v. Knight,* 532 F.3d 567, 577 (6th Cir. 2008) (quoting parenthetically *Pittman v. Oregon Employment Dep't*, 509 F.3d 1065, 1074 (9th Cir. 2007) ("[W]e hold that § 1981 does not contain a cause of action against states.")) (other citations omitted). Additionally, "§ 1981a does not afford an independent ground for relief but is a statutory provision for additional recovery of damages in Title VII cases."  *Powers v. Pinkerton, Inc*., 28 F.Supp.2d 463, 472 (N.D. Ohio 1997).  The potential for additional damages under § 1981a in Title VII cases does not presently help Plaintiff because she has not asserted a Title VII claim.

Accordingly, dismissal of Plaintiff's 1st cause is warranted.

**D.**    **42 U.S.C. § 1983**

Defendants contend that Plaintiff's § 1983 claim fails to meet the minimum

pleading requirements of *Iqbal* and *Twombly* because her Complaint does not identify the

any constitutional provision that Defendants violated.  Defendants rely on several cases

support the proposition that § 1983 claims are "only cognizable when based on the

violation of a constitutional right."  (Doc. #12, *PageID* #204-05).

Defendants' three supporting cases, however, speak to one element of § 1983

claim—violation of a constitutional right—rather than to whether a *pro se* plaintiff must

assert the violation of a specific constitutional right to avoid Rule 12(b)(6) dismissal.

None of Defendants' cases discuss this issue under Rule 12(b)(6) and the standards

established in *Twomby* and *Iqbal*.  *See Day v. Wayne County Bd. of Auditors*, 749 F.2d

1199, 1202 (6th Cir. 1984) (pre-dating *Twombly* and *Iqbal*); *Siegner v. Township of

Salem*, 654 F. App'x 223, 233 (6th Cir. 2016) (summary-judgment case); *Toth v. City of

Toledo*, 480 F. App'x 827 (6th Cir. 2012) (summary-judgment case).  Defendants'

reasoning is likewise unconvincing.  They start from the general premise that § 1983

claims must be based on a violation of a specific constitutional right.  This is certainly a

correct statement of law in the context of what a § 1983 plaintiff must ultimately *prove*.

*See Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) ("To prove a claim under

42 U.S.C. § 1983, a plaintiff must establish: (1) that he was deprived of a right secured by

the Constitution or laws of the United States …." (footnoted omitted).  This alone,

however, says nothing informative about measuring the plausibility of a § 1983 claim or

about whether a *pro se* plaintiff will incur a Rule 12(b)(6) dismissal when he or she fails to reference a violation of a specific constitutional provision in their complaints. Defendants, moreover, presently offer no meaningful analysis of this Rule 12(b)(6) issue. And it seems a dubious proposition given that "[f]ederal pleading rules call for a short and plain statement that the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*,— U.S. —, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014).

Defendants next contend that Plaintiff's claims against the individual Defendants (employees of DJFS) in their official capacity are claims against Montgomery County. This is correct.

"Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' Courts regularly dismiss as redundant claims against agents in their official capacities when the principal entity is also named as a defendant in the suit." *Carter v. Delaware County Bd. of Com'rs*, 2009 WL 544907, at *14 (S.D. Ohio 2009) (quoting, in part, *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099 (1985) (other citation omitted). As seen above, however, DJFS is *sui juris*. Plaintiff has not named Montgomery County as a Defendant. Yet, liberally construing in her favor her official-capacity claims against at least some of the Defendants—for example, Defendant Tom Kelly, Director of DJFS; Defendant Hay, Plaintiff's job trainer (and perhaps co-worker); Defendant Myers, Human Resources Coordinator; and Defendant Mundy, a clerical supervisor—dismissal of these claims is

presently unwarranted for two reasons: First, it is premature to dismiss Plaintiff's official-capacity § 1983 claims against the individuals Defendants because Montgomery County is not named as a defendant in Plaintiff's *pro se* Complaint. *Cf. Pethtel v. Washington County Sheriff's Office*, 2:06cv799, 2007 WL 2359765, at *5 (S.D. Ohio 2007) ("Because Washington County has now been named as a defendant, the claims brought against the county defendants in their official capacities are redundant and will be dismissed."). Second, the County Defendants recognize that Plaintiff's official-capacity § 1983 claims are "the equivalent of a claim against the local government entity and therefore Montgomery County." (Doc. #12, *PageID* #206). This leads to Defendants' next argument.

Defendants argue that Plaintiff's claims against Montgomery County must be dismissed because she fails to identify an official policy that violated her constitutional rights.

Again, the reference points for analysis are Plaintiff's *pro se* Complaint together with her Response to Defendants' Motion to Stay and her Motion to Amend Pleadings, for the reasons explained previously. *See supra*, § IV(A). Construing these documents liberally in Plaintiff's favor reveals that although she falls short of specifying the particular municipal policy or custom at issue, her Response attempts to advance, through a discussion of law, a § 1983 claim based on theories of supervisory-level policymaking authority and supervisory acquiescence in unconstitutional conduct. This, together with her allegations of a racially hostile work environment created by Defendant Hay, retaliation by Defendant Mundy, a denial of due process in her termination, and knowing

acquiescence in unconstitutional conduct by at least some of the individual Defendants, Rule 12(b)(6) dismissal of Plaintiff's official-capacity § 1983 claims is presently unwarranted. Additionally, because leave to amend a pleading is freely allowed a justice so requires, *see* Fed. R. Civ. P. 15(a)(2), Plaintiff should be given an opportunity to Amend her Complaint to address the deficiencies in her § 1983 claims that Defendants identify.

**E.**      **Intentional Infliction of Emotional Distress**

Plaintiff alleges that the discriminatory and abusive work environment Defendants subjected her to cause her a nervous breakdown, caused her to be distracted from her job performance, caused her to be discouraged while on the job, kept her from advancing in her career. She asserts that because of these problems, the Veterans Administration has ruled that she is permanently disabled due to mental instability. (Doc. #2, *PageID* #142).

Defendants contend that Plaintiff has failed to raise a plausible claim of intentional infliction of emotional distress because mere insults, berating comments, petty oppressions, or other trivialities are not sufficient to establish such a claim under Ohio law.

One essential element of a claim in Ohio for intentional infliction of emotional distress is "where defendant' s conduct is 'extreme and outrageous' in that it goes 'beyond all possible bounds of decency,' is 'atrocious,' and is 'utterly intolerable in a civilized community'; conduct that is merely malicious, aggravated, or intentional or that entails an intent that is tortious or criminal is insufficient to render it actionable." *Abbott*

*v. Crown Motor Co., Inc.*, 348 F.3d 537, 545 (6th Cir. 2003) (quoting, in part, *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983)).

Accepting Plaintiff's allegations as true and liberally construing her Complaint and Response in her favor, and in the absence of an Amended Complaint, a Rule 12(b)(6) dismissal of her claims of retaliation and race discrimination would be premature. *Cf. Johnson v. Cox*, 1997 WL 152636, at *4 (Ohio App. 4 Dist.,1997) ("sexual harassment on the job is an intentional infliction of emotional distress.").

**F.    Defendant Hay's Motion to Dismiss**

Defendant Hay's Rule 12(b)(6) Motion seeks dismissal of Plaintiff's three causes of action.  The above analysis of Plaintiff's first and third causes of action, under 42 U.S.C. § 1981a and for intentional infliction of emotional distress (respectively), applies equally to Defendant Hay's Rule 12(b)(6) Motion. Consequently, dismissal of Plaintiff's § 1981a claim against Defendant Hay is warranted under Rule 12(b)(6), and dismissal of Plaintiff's claim of intentional infliction of emotional distress would be premature.

Defendant Hay contends that Plaintiff's Complaint fails to state a § 1983 claim because it does not indicate that she acted under color of state law.  Hay reasons that bargaining Union officials (like Hay) do not act under the color of state law.  Hay also points out that she lacked the authority to terminate anyone's employment at DJFS.

Hay is correct that she was not a state actor and did not act under the color of state law when she engaged in conduct as a union official. *See Harris v. Morris*, No. 91-4010, 1993 WL 2303, at *2 (6th Cir. 1993) ("The Union and its officers were not acting under color of law, notwithstanding that they represented state employees.").  Yet, accepting

Plaintiff's allegations as true and liberally construing her Complaint in her favor, she raises allegations about Hay's discriminatory conduct as her job trainer and Hay's discriminatory use of her authority as Plaintiff's job-performance evaluator during Plaintiff's probationary period with DJFS. Because Defendant Hay engaged in such alleged acts as an employee of DJFS, if not in a supervisory role for DJFS, the Complaint plausibly alleges that Hay acted under the color of state law.

Accordingly, Defendant Hay's Motion to Dismiss is well taken as to Plaintiff's first cause of action but not well taken as to her second and third causes of action.

## G. Remaining Matters

Plaintiff's Complaint includes a notation on the first page indicating that Edward Levi Jones is a Plaintiff. But, Mr. Jones is not described in the Complaint as a party to the case, and he did not sign the Complaint. Consequently, dismissal of Mr. Jones as a Plaintiff in this case is warranted.

Lastly, Defendants have filed several Motions seeking a stay of discovery pending a ruling on their Motions to Dismiss. In light of the recommendations set forth herein, Defendants' Motions to Stay will be moot regardless of the outcome any objections to this Report and Recommendations and given the upcoming need for an Amended Scheduling Order in this case.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Montgomery County Defendants' Motion to Dismiss under Fed. R. 12(b)(6) (Doc. #12) be GRANTED, in part, and Plaintiff's claim under 42 U.S.C. § 1981a be dismissed;

2. Montgomery County Defendants' Motion to Dismiss under Fed. R. 12(b)(6) (Doc. #12) be DENIED in remaining part;

3. Defendant Hay's Motion to Dismiss (Doc. #13) be GRANTED, in part, and Plaintiff's claim against her under 42 U.S.C. § 1981a be dismissed;

4. Defendant Hay's Motion to Dismiss (Doc. #13) be DENIED in remaining part;

5. Plaintiff's Motion to Amend Complaint (Doc. # 20) be GRANTED, and Plaintiff be directed to file her First Amended Complaint within 20 days of a Decision addressing this Report and Recommendations;

6. Defendants' Motions and Supplemental Motions to Stay Discovery (Doc. #s 16, 17, 21) be DENIED as moot; and

7. Defendants' Motion for Scheduling Conference (Doc. #28) be GRANTED and a Scheduling Conference be set after a Decision addressing this Report and Recommendations.


December 10, 2018          *s/Sharon L. Ovington*
                          Sharon L. Ovington
                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).