UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JEWELL EVETTE JONES, *et al.*,

    Plaintiffs,

vs.

MONTGOMERY COUNTY DEPARTMENT
OF JOBS AND FAMILY SERVICES, *et al.*,

    Defendants.

Case No. 3:18-cv-37

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) DEFENDANTS' MOTIONS TO DISMISS (DOCS. 37, 38) BE GRANTED IN PART AND DENIED IN PART; (2) AND THIS CASE REMAIN PENDING ON THE COURT'S DOCKET WITH REGARD TO PLAINTIFF'S OFFICIAL CAPACITY TITLE VII CLAIMS ALLEGING RACE DISCRIMINATION AND RETALIATION**

---

This civil case is before the Court on two motions to dismiss filed by Defendants: (1) the motion of Defendant Jane Hay; and (2) the combined motion filed by the remaining Defendants. Docs. 37, 38. *Pro se* Plaintiff Jewell Evette Jones filed a memorandum in opposition. Doc. 42. Defendants filed separate reply memoranda. Docs. 44, 47. The undersigned has carefully considered all of the foregoing, and Defendants' motions are ripe for decision.

**I.**

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

1

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555).

In determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. "[T]he factual allegations must be specific enough to justify 'drag[ging] a defendant past the pleading threshold.'" *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999).

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. In addition to well-pleaded allegations in the complaint, the Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," as well as documents attached to a defendant's motion to dismiss that are important to the plaintiff's claims or if referred to in the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted); *Composite Tech., L.L.C. v. Inoplast Composites S.A. de C.V.*, 925 F. Supp. 2d 868, 873 (S.D. Ohio 2013).

A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)).

## II.

The facts set forth herein are those alleged by *pro se* Plaintiff in her amended complaint. *See* doc. 34. The well-pled factual allegations asserted therein are accepted as true for purposes of deciding Defendants' motions to dismiss. *See Papasan v. Allain*, 478 U.S. 265, 283 (1986) ("We are bound for the purposes of this review to take the well-pleaded factual allegations in the complaint as true").

Plaintiff is an African-American woman who worked as a probationary employee for the Montgomery County Department of Job and Family Services, Children Services Division, in Dayton, Ohio ("MCDJFS") until her termination from employment in early 2017. Doc. 34 at PageID 566. Defendant Jane Hay also works for MCDJFS, possesses extensive knowledge of Ohio's Statewide Automated Child Welfare Information System ("SACWIS"), and trains new MCDJFS employees on that system during their probationary period of employment. *Id*. at PageID 568-69. Hay also serves as President of the Professional Guild of Ohio ("PGO"), which is a trade union representing employees at MCDJFS. *Id*. at PageID 568.

According to *pro se* Plaintiff, Hay used her position as a trainer and her extensive knowledge of the SACWIS system to purposefully train African-American probationary employees improperly so that they would make mistakes with their work and be terminated at the conclusion of the probationary period. *Id*. Hay also allegedly altered Plaintiff's work in the SACWIS database so that it would appear Plaintiff was making mistakes, such as typographical errors. *Id*. at PageID 581. Finally, Plaintiff contends that Hay harassed, intimidated, cursed,

3

belittled, and made racist statements to subordinate African-American employees, and used her position as PGO President to shield herself from repercussions. *Id*.

Hay's alleged conduct included:

- Telling Plaintiff to "stay away from the black girls" (doc. 2 at PageID 105);

- Reviewing Plaintiff's work product, marking it up, returning the work to Plaintiff for correction, and, after reviewing Plaintiff's corrected work -- which Plaintiff contends was to Hay's specifications -- Hay would continue to find errors and give revisions in contradiction to her initial revisions (*id.* at Pageid 572-73);

- Telling Plaintiff to no ask a more experienced Caucasian employee to assist her or to review her work product (*id*. at PageID 575);

- Loudly and obnoxiously insulting, belittling, and berating Plaintiff (*id*. at PageID 576);

- "[T]alk[ing] about black women's attire loudly while Plaintiff was walking with her" (*id.*);

- Calling African-American co-workers "those heifers" (*id.*);

- "[Making] sexual advances towards a black male employee and when he reciprocated the advances, [filing] a sexual harassment lawsuit against the black employee and [having] him terminated" (*id*. at PageID 577);

Plaintiff alleges that she reported Hay's conduct to her immediate supervisor, Defendant Sandra Mundy, who told her "she was worrying too much . . . and not concentrating on her work." Doc. 34 at PageID 569. Plaintiff alleged she also informed Mundy's supervisor, Defendant Debby Shaw, about "how much pressure . . . Hay was putting on [her][,]" but "Shaw dismissed [her] accusations and sent [her] back to work." *Id*. at PageID 585-87. She also alleges that she reported to the PGO vice president, Debra Robinson, that "Hay was sabotaging her work and . . . not training [her] to retain the job." *Id*. at PageID 582. Robinson, in turn, allegedly informed MCDJFS human resources employee Deansai Myers about Plaintiff's complaints. *Id*. at PageID 583.

4

Ultimately, MCDJFS terminated Plaintiff's employment on February 3, 2017. Doc. 37-1 at PageI 629. On March 17, 2017, Plaintiff filed an employment discrimination charge with the Ohio Civil Rights Commission ("OCRC") alleging discrimination on the basis of race/color and age. Doc. 38 at PageID 655.[2] Plaintiff also asserted retaliation and hostile work environment allegations in her charge. *Id*. The OCRC dismissed the charge by letter issued on September 28, 2017. Doc. 38 at PageID 656-57. The Equal Employment Opportunity Commission ("EEOC") issued a right to sue letter to Plaintiff on November 3, 2017. Doc. 38 at PageID 654. Under 42 U.S.C. § 2000e-5(f)(1), Plaintiff was required to file any Title VII claims asserted in her OCRC charge in a federal court within 90 days after receipt of the right to sue letter.

On February 1, 2018 -- *i.e.*, 90 days after the date of the right to sue letter -- Plaintiff filed this action by seeking leave to proceed *in forma pauperis* ("IFP"). Doc. 1. After Plaintiff's motion to proceed IFP was granted and service issued, Defendants moved to dismiss the original complaint. In response, Plaintiff moved for leave to file an amended complaint. Docs. 12, 13, 20. Judge Ovington issued a Report and Recommendation on December 10, 2018 recommending, among other findings, that Plaintiff's motion for leave to amend be granted. Doc. 29. Judge Rice ultimately granted Plaintiff leave to file an amended complaint and declared Defendants' motions to dismiss moot as a result. Doc. 33. Plaintiff filed her amended complaint on April 9, 2019 (doc. 34), which Defendants now move to dismiss. Docs. 37, 38.

---

[2] Although the OCRC and EEOC documents were not appended to the amended complaint, they are referenced in Plaintiff's amended complaint and are central to her claims. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim"). "[T]here is no question that the EEOC charge, the filing of which was a precondition to [Plaintiff] bringing this suit, is central to [her] discrimination claim." *Id*. Further, such documents are considered matters of public record that can appropriately be considered without converting a Rule 12 motion to dismiss into a motion for summary judgment under Rule 56. *Caplinger v. Uranium Disposition Servs.*, LLC, No. 2:08-CV-548, 2009 WL 367407, at *2 (S.D. Ohio Feb. 11, 2009); *see also Williams v. Steak 'N Shake*, No. 5:11CV833, 2011 WL 3627165, at *3 (N.D. Ohio Aug. 17, 2011).

**III.**

Defendants argue that Plaintiff's amended complaint is subject to dismissal under Rule 12(b)(6) for several reasons that the Court will address in turn.

**A. Claims in the Original Complaint**

Initially, there appears to be confusion regarding the claims presently before the Court in the amended complaint. Defendants suggest that the claims Plaintiff asserts in the original complaint -- namely a civil rights claim under 42 U.S.C. § 1983 and a claim for intentional infliction of emotional distress ("IIED") under Ohio law -- are no longer before the Court.[3] *See* doc. 37 at PageID 607; doc. 38 at PageID 638. Plaintiff argues that she incorporated these claims from her original complaint into the amended complaint and, therefore, they survive the filing of her amended complaint. Doc. 42.

While a plaintiff may incorporate by reference his or her original complaint in an amended complaint, *Brown v. Voorhies*, No. 1:07-CV-463, 2009 WL 2730522, at *3 (S.D. Ohio Aug. 26, 2009) ("Although in most circumstances the amended complaint supersedes the original complaint, this rule does not apply when the amended complaint incorporates by reference the original"), and Plaintiff incorporated parts of her original complaint by reference in the amended complaint, her § 1983 and IIED claims are not among those provisions incorporated by reference. *See* doc. 34. Instead, in the amended complaint, Plaintiff essentially incorporates by reference the *factual* allegations asserted in her original complaint, not the causes of action advanced therein.

---

[3] In her original complaint, Plaintiff also purported to assert a claim under 42 U.S.C. § 1981a. *See* doc. 2 at PageID 137. "[A] claim based on § 1981a does not afford an independent ground for relief but is a statutory provision for additional recovery of damages in Title VII cases." *Powers v. Pinkerton, Inc.*, 28 F. Supp. 2d 463, 472 (N.D. Ohio 1997), *aff'd*, 168 F.3d 490 (6th Cir. 1998). Thus, Plaintiff's request for relief under § 1981a is not an independent cause of action. Because § 1981a does not provide an independent cause of action separate and apart from a Title VII claim, any discussion of Plaintiff's Title VII claims necessarily includes her claim for damages under §1981a.

*Id.* at PageID 567 (incorporating factual allegations from the original complaint by reference in paragraphs 3, 38 and 77).

Although Plaintiff references 42 U.S.C. § 1983 in the jurisdiction and venue portion of her amended complaint, she does not otherwise reallege her § 1983 or IIED causes of action anywhere therein. *See* doc. 34 at PageID 578-93. Instead, she asserts only two "counts" in her amended complaint: (1) a claim asserting discrimination (Count I) in violation of Title VII, 42 U.S.C. § 2000e-2(a); and (2) a claim asserting retaliation (Count II) in violation of Title VII, 42 U.S.C. § 2000e-3(a). *Id.* at PageID 578-79. By failing to reallege or incorporate by reference the § 1983 and IIED claims in her amended complaint, from the undersigned's perspective, those claims are no longer part of the case. *See Drake v. City of Detroit, Mich.*, 266 F. App'x 444, 448 (6th Cir. 2008); *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011); *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 268 n.8 (6th Cir. 2008). Thus, the undersigned does not address Defendants arguments as they relate to Plaintiff's § 1983 and IIED claims.

### B. Proper Parties

Plaintiff names five Defendants in the caption of her complaint: (1) MCDJFS; (2) Jane Hay; (3) Jewell Good; (4) Debby Shaw; and (5) Sandra Mundy. Doc. 34 at PageID 565. Plaintiff also arguably asserts claims against Deansai Myers, although she is not listed among the Defendants in the caption of the amended complaint.

As previously noted by Judge Ovington in this case, MCDJFS lacks the capacity to be sued, *i.e.*, it is not *sui juris*. Doc. 29 at PageID 526; *see also Arsan v. Keller*, No. 3:17-CV-121, 2018 WL 635894, at *4 (S.D. Ohio Jan. 31, 2018), *report and recommendation adopted*, No. 3:17-CV-121, 2018 WL 3933706 (S.D. Ohio Aug. 16, 2018), *aff'd*, 784 F. App'x 900 (6th Cir. 2019); *Adams v. Montgomery Cnty. Children's Servs.*, No. 3:15CV00127, 2015 WL 4638872, at *3 (S.D. Ohio

7

Aug. 4, 2015), *report and recommendation adopted sub nom. Adams v. Montgomery Cnty. Childrens Servs.*, No. 3:15-CV-127, 2016 WL 224096 (S.D. Ohio Jan. 19, 2016); *McGuire v. Ameritech Servs., Inc.*, 253 F. Supp. 2d 988, 1015 (S.D. Ohio 2003). Despite having been notified previously that she failed to name the proper entity in her original complaint this case, Plaintiff's amended pleading failed to cure this deficiency and continues to name MCDJFS as a Defendant. Because MCDJFS is not capable of being sued, it should be dismissed as a Defendant in this case.

With regard to the claims asserted against the individual Defendants, as held by the Sixth Circuit, "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Plaintiff sets forth no allegations in her amended complaint upon which the Court could plausibly conclude that any of the individual Defendants are "employers" for purposes of Title VII. Thus, Title VII claims asserted against any Defendant in their individual capacities should also be dismissed.

Based on the prayer for relief set forth in Plaintiff's complaint, wherein Plaintiff seeks compensatory damages against MCDJFS only, the undersigned liberally construes the pleadings -- as the Court is required to do -- and finds that Plaintiff's claims against the individually named Defendants are, in fact, Title VII claims asserted against them in their official capacities, *i.e.*, against their employer. *See Wilson v. Nutt*, No. 96-6683, 1998 WL 30813, at *3 (6th Cir. Jan. 22, 1998) ("When a person says he [or she] is suing a public official in his [or her] 'official capacity,' that term is being utilized as shorthand for the government agency to which the plaintiff is looking for recovery"). Because the proper governmental entity is not yet named as a party to this case, *see supra*, the undersigned concludes that the official capacity claims against the individual Defendants should remain.

### C. Timely Filing of Title VII Claims

Defendants argue that Plaintiff's Title VII claims should be dismissed because such claims were not filed within 90-days as required by 42 U.S.C. §2000e-5(f)(1). In so arguing, Defendants concede that Plaintiff instituted this action on February 1, 2018, *i.e.*, within the 90-days after issuance of the November 3, 2017 right to sue letter (doc. 37-2 at PageID 630). Nevertheless, Defendants argue that, because Title VII claims were not included in her original complaint, the later inclusion of those claims in the amended complaint (filed April 9, 2019) is untimely.

The undersigned finds no merit to Defendants' contention in this regard. "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading." Fed. R. Civ. P. 15(c)(1). Pursuant to Rule 15(c), "Title VII claims brought in an amended complaint may relate back to the original complaint." *Caimona v. Ohio Civil Serv. Employees Ass'n*, No. 4:18CV785, 2018 WL 6386023, at *3 (N.D. Ohio Dec. 6, 2018) (citing *Lockhart*, 531 F. App'x 548).

In this case, the conduct underlying Plaintiff's Title VII claims in her amended complaint is the exact same conduct underlying the claim she pled in her original complaint. Docs. 2, 34. Therefore, Plaintiff's discrimination and retaliation claims relate back to her original, timely filed complaint. *See Caimona*, 2018 WL 6386023, at *3. As a result, Defendants' arguments in this regard are without merit.

### D. Exhaustion of Administrative Remedies

Next, Defendants argue that Plaintiff's Title VII claims asserting disparate treatment and a hostile work environment on the basis of national origin are also subject to dismissal because Plaintiff failed to exhaust such claims administratively. Defendants all point to Plaintiff's charge

9

filed with the OCRC, in which she asserts that she suffered a hostile work environment and from discrimination on the basis of race/color and age. Doc. 38 at PageID 655. Although the Title VII claim asserted in her amended complaint charges discrimination on the basis of national origin, no such allegation is contained in her administrative charge.

Before asserting claims in a court of competent jurisdiction, "federal employees who allege that they have been victims of discrimination must exhaust their administrative remedies." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). Thus, federal courts can hear only those Title VII claims that have been explicitly asserted in a charge made to the ORRC or the Equal Employment Opportunity Commission ("EEOC") or claims that "can be reasonably expected to grow out of" such administrative charges. *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001). Claims can reasonably be expected to grow from an EEOC charge "[w]hen the EEOC investigation of one charge in fact reveals evidence of a different type of discrimination against the plaintiff" or "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim[.]" *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).

The OCRC charge here alleged discrimination and hostile work environment on the basis of race and age. Doc. 38 at PageID 655. "A claim of discrimination based on race does not necessarily give rise to claims of . . . national origin discrimination." *Wakefield v. Children's Hosp.*, No. C2-06-1034, 2008 WL 3833798, at *6 (S.D. Ohio Aug. 13, 2008). "The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88, (1973). Here, Plaintiff's EEOC charge sets forth "nothing about where Plaintiff was born or which country [her] ancestors came from." *Carter v. Delaware Cnty. Bd. of Comm'rs*, No. 2:07-CV-1189, 2009

10

WL 544907, at *8 (S.D. Ohio Mar. 3, 2009). Accordingly, the undersigned concludes that Plaintiff's Title VII claims based on national origin discrimination should be dismissed as a result of Plaintiff's failure to exhaust administrative remedies.

Without dispute, however, Plaintiff did administratively exhaust race discrimination and retaliation claims. While Plaintiff labels her claim as one asserting national origin discrimination, it clear from the substance of her allegations that she actually intends to assert that Defendants discriminated against her on the basis race. *See* doc. 34 at PageID 568 (alleging that Hay made "racist statements to the employees beneath her" and that Hay "interfered with [P]laintiff and other black employees' job performance"); *id*. at PageID 579 (alleging that MCDJFS permitted Hay to "create a racially charged work environment that other black employees were afraid to continuously complain about because of the positions held by . . . Hay"); *id*. at PageID 569 (alleging Hay made "racial remarks"); *id*. at PageID 570 (alleging that Hay made open displays of racism); *id*. at PageID 574 (alleging that Hay intended to never "have any black person" hold Plaintiff's position); *id*. at PageID 575 (alleging that another employee left for a position away from Hay because of, *inter alia*, Hay's "racist attitude"); *id.* at PageID 576 (alleging that Hay referred to Plaintiff's "black female co-workers as black cows").

"It is incumbent on the court to take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds." *Friedmann v. Campbell*, No. 98-6728, 1999 WL 1045281, at *1 (6th Cir. Nov. 8, 1999). In fact, "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Accordingly, courts should "not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001); *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 (6th Cir. 2003); *see also United States v. Louisville & N. R.*

11

*Co.*, 221 F.2d 698, 701 (6th Cir. 1955) ("[T]he label which a plaintiff applies to his pleading does not determine the nature of the cause of action").

Here, the substance of Plaintiff's allegations in the amended complaint advance Title VII discrimination claims on the basis of race. Therefore, while Plaintiff did not administratively exhaust claims based on national origin, she did exhaust claims based on race and retaliation and those claims have been timely asserted. *See supra*.

E. **Sufficiency of the Allegations**

Defendants further argue that Plaintiff fails to set forth factual allegations sufficient to plausibly allege a racially hostile work environment. There are "two requisite elements for a racially hostile work environment claim: 'repeated slurs and management's tolerance and condonation of the situation.'" *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1988); *Dabish v. Chrysler Motors Corp.*, No. 89–1554, 1990 WL 59899, at *1 (6th Cir. May 9, 1990); *Lewis v. Zero Breese Co.*, No. 98-4110, 1999 WL 1023975, at *2 (6th Cir. 1999).

Here, Plaintiff does generally allege that Hay "permeated the entire workplace" with, *inter alia*, "racial remarks." Doc. 34 at PageID 569. In addition to this general allegation, Plaintiff further alleges that Hay told her to "stay away from the black girls in the building" (doc. 2 at PageID 105); referred to Plaintiff's black co-workers as "those heifers" (doc. 34 at PageID 576); and "would walk around the building and talk about black women's attire loudly." (*id*. at PageID 576). Plaintiff also alleges that she and others made "repeated complaints" to supervisors and to human resources about Hay's conduct. Based on the foregoing, the undersigned concludes that Plaintiff sufficiently alleges a racially hostile work environment claim under Title VII.

Defendants also contend that Plaintiff's claim of retaliation must be dismissed. Doc. 37 at PageID 622-25; To set forth a *prima facie* case of retaliation under Title VII, a plaintiff must show

that "(1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment." *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (emphasis omitted).

Defendants' argument regarding Plaintiff's retaliation claim is focused on Plaintiff's failure to allege that she engaged in protected activity by complaining about discrimination on the basis of national origin. Doc. 37 at PageID 624. The Court agrees with this argument.

However, as noted *supra*, the undersigned finds that, despite how Plaintiff labeled her claim in the amended complaint, the substance of her pleading alleges race discrimination. Plaintiff claims that she reported Hay's allegedly discriminatory conduct to her supervisors and to human resources, and such action suffices to allege, for purposes of Fed. R. Civ. P. 12(b)(6), that she engaged in protected conduct. *Weaver v. Ohio State Univ.*, 71 F. Supp. 2d 789, 793 (S.D. Ohio 1998) ("[A]n informal complaint to an employer concerning practices which are prohibited by Title VII is sufficient to constitute protected activity"), *aff'd*, 194 F.3d 1315 (6th Cir. 1999); *Wilson v. Wayne Cnty.*, 856 F. Supp. 1254, 1260 (M.D. Tenn. 1994) ("Forms of protected opposition include . . . reporting illegal discrimination to supervisors"). Accordingly, Plaintiff sufficiently states a retaliation claim under Title VII.

## IV.

For the foregoing reasons, the undersigned concludes that: (1) Plaintiff's § 1983 claims are no longer part of this case; (2) Plaintiff's claims against MCDJFS should be **DISMISSED** because it is not *sui juris*; (3) Plaintiffs' claims against Defendants in their individual capacities should be

**DISMISSED**; and (4) Plaintiff's Title VII claims based on national origin discrimination should be **DISMISSED**. However, the undersigned further concludes that Plaintiff's Title VII race discrimination and retaliation claims asserted against Defendants Hay, Good, Shaw, Mundy, and Myers in their official capacities (*i.e.*, claims actually asserted against her proper County employer, *see supra*) should **REMAIN PENDING**.

Accordingly, consistent with the foregoing, the undersigned **RECOMMENDS** that Defendants' motions to dismiss the amended complaint (docs. 37, 38) be **GRANTED IN PART** and **DENIED IN PART**.


Date:  February 3, 2020                               s/ Michael J. Newman
                                                                          Michael J. Newman
                                                                          United States Magistrate Judge

# **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).