IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JEWELL EVETTE JONES, et al.,               :

     Plaintiffs,

    v.                                     :

MONTGOMERY COUNTY                                        Case No. 3:18-cv-00037
DEPARTMENT OF JOB AND                                    JUDGE WALTER H. RICE
FAMILY SERVICES, CHILDREN      :
SERVICES DIVISION, et al.,

     Defendants.

---

DECISION AND ENTRY ADOPTING IN PART AND REJECTING IN
PART THE REPORT AND RECOMMENDATIONS OF THE UNITED
STATES MAGISTRATE JUDGE (DOC. #57); SUSTAINING THE
OBJECTIONS OF DEFENDANTS MONTGOMERY COUNTY
DEPARTMENT OF JOB AND FAMILY SERVICES, CHILDREN
SERVICES DIVISION; JEWELL GOOD; DEBBY SHAW; SANDRA
MUNDY AND DEANSAI MYERS ("MONTGOMERY COUNTY
DEFENDANTS") AND JANE HAY (DOC. #59); OVERRULING THE
SEPARATE OBJECTIONS OF JANE HAY (DOC. #58); DEFENDANTS
TOM KELLEY, MICHELLE MATTHEWS AND RONALD CHURCH
DISMISSED WITHOUT PREJUDICE; MONTGOMERY COUNTY
DEPARTMENT OF JOB AND FAMILY SERVICES, CHILDREN
SERVICES DIVISION DISMISSED AS NOT SUI JURIS AND
MONTGOMERY COUNTY SUBSTITUTED AS DEFENDANT;
SUSTAINING THE MOTION TO DISMISS OF MONTGOMERY
COUNTY DEFENDANTS AND JANE HAY (DOC. #37); AND
SUSTAINING IN PART AND OVERRULING IN PART THE SEPARATE
MOTION TO DISMISS OF DEFENDANT JANE HAY (DOC. #38)

---

This matter is before the Court on Magistrate Judge Michael Newman's

Report and Recommendations, Doc. #57. Objections have been filed by the

Montgomery County Department of Job and Family Services, Children Services Division ("MCDJFS"), and the following employees of MCDJFS: Jewell Good ("Good"); Debby Shaw ("Shaw"); Sandra Mundy ("Mundy"); Deansai Myers ("Myers") and Jane Hay ("Hay"), Doc. #59. MCDJFS, Good, Shaw, Mundy and Myers are referred to, collectively, as the "Montgomery County Defendants." Separate objections to the Report and Recommendations were also filed by Hay, Doc. #58.

Plaintiff, *pro se*, Jewell Evette Jones ("Plaintiff" or "Jones"), has not filed any objections to the Report and Recommendations.

The Court has reviewed the Motion to Dismiss filed by the MCDJFS, Tom Kelley, the Montgomery County Defendants, Michelle Matthews and Hay, Doc. #37,[1] and the separate Motion to Dismiss, Doc. #38, filed by Hay. The Court has considered the "Answer to Defendants' Motions to Dismiss" filed by Plaintiff, Doc. #42, and the replies filed by all Defendants, Docs. #44 and #47.

Magistrate Judge Newman has recommended that the Motions to Dismiss, Docs. #37 and #38, be granted, in part, and overruled, in part.

---

[1] In her Amended Complaint, Plaintiff incorporates by reference the "Statement of the Parties" and "Statement of Facts" from her Complaint. Doc. #34, PAGEID##567 and 578; Doc. #2, PAGEID##2, 91-93, 98-137. The caption of the Amended Complaint is revised. This has created confusion as to whom are Defendants in the Amended Complaint. Tom Kelley and Michele Matthews are identified only in the caption of the Amended Complaint but are not mentioned further in this pleading. They are, however, named as parties to the Motion to Dismiss, Doc. #37. The Report and Recommendations do not mention either of these individuals. Doc. #57. Additionally, neither Tom Kelley nor Michelle Matthews are parties to the Objections, Doc. #59.

(1) Plaintiff's § 1983 claims are no longer part of this case; (2) Plaintiff's claims against MCDJFS should be DISMISSED because it is not *sui juris*; (3) Plaintiffs' claims against Defendants in their individual capacities should be DISMISSED; and (4) Plaintiff's Title VII claims based on national origin discrimination should be DISMISSED. However, the undersigned further concludes that Plaintiff's Title VII race discrimination and retaliation claims asserted against Defendants Hay, Good, Shaw, Mundy, and Myers in their official capacities (i.e., claims actually asserted against her proper County employer, see *supra*) should REMAIN PENDING.

Doc. #57, PAGEID##783-784.

Based upon the above-mentioned pleadings and for the reasons set forth below, the Court adopts in part and rejects in part the Report and Recommendations of Magistrate Judge Michael Newman, Doc. #57.

The Court will review, *de novo,* in accordance with Fed. R. Civ. P. 72, the objections filed by the Montgomery County Defendants and Hay, Doc. #59, and the separate objections filed by Hay, Doc. #58.

## I.  Procedural and Factual Background

Plaintiff's *pro se* Amended Complaint, Doc. #34, was filed April 9, 2019, and incorporates certain parties, facts, and claims from her original Complaint. [2]  The

---

[2] On February 1, 2018, *pro se* Plaintiff filed her Complaint, Doc. #2, and all Defendants filed Motions to Dismiss, Doc. ##12 and 13.  Plaintiff filed a motion to amend her complaint, Doc. #20, and Magistrate Judge Sharon Ovington issued a Report and Recommendations, Doc. #29.  On March 22, 2019, a Decision and Entry was filed adopting the Report and Recommendations, in part, and declaring same moot, in part, Doc. #33. Plaintiff's motion to amend her complaint, Doc. #20, was sustained by the Court, Doc. #33.

3

Amended Complaint names the following Defendants: (1) "Montgomery County Children['s] Services Division;" (2) Hay, "in her individual capacity" and in her "official capacity as a Court Review Specialist, Rank 1" for MCDJFS and in her "official capacity as President of Professional Guild of Ohio (PGO) Council 12;" (3) Ronald Church, in his "individual capacity" and in his "official capacity as Regional Supervisor of PGO[,] Council 12;"[3] (4) Good in her "individual capacity" and in her "official capacity as an Assistant Director" for MCDJFS; (5) Myers in her "official capacity as Human Resources Coordinator" for MCDJFS; and (6) Shaw in her "individual capacity" and in her "official capacity as District 2 Manager/Supervisor for MCDJFS." Doc. #34, PAGEID#567, incorporating Doc. #2, PAGEID#91-93.[4]  The Amended Complaint alleges two claims: Count I, "hostile work environment based on national origin" under Title VII, 42 U.S.C. § 2000e-2(a), and, Count II, retaliation for engaging in protected activity under Title VII, 42 U.S.C. § 2000e-3(a).

---

[3] Although Plaintiff has named Ronald Church as a Defendant in the Amended Complaint, Doc. #34, PAGEID#567; Doc. #2, PAGEID#92, her prayer for relief requests that the Court "correct the caption by replacing the name Ronald Church with John Doe." Doc. #34, PAGEID#594.

[4] Although the Amended Complaint does not include Sandra Mundy as a Defendant, Plaintiff has listed her in the revised caption of the Amended Complaint indicating her job title as "Clerical Supervisor, Montgomery County Job and Family Services, Children Services Division." Doc. #34, PAGEID##565-567; Doc. #2, PAGEID#93. As such, she is named in the Motion to Dismiss, referenced in the Report and Recommendations and included in the Objections, Doc. ##37, 57 and 59.

According to the allegations in the Amended Complaint, Jones, an African American woman, was hired and reported to MCDJFS, Children Services Division, "under the job description of Secretary 1 (CS), grade PG05," on May 16, 2016. Doc. #2, PAGEID#102; Doc. #34, PAGEID#568. She was terminated "the third week of January 2017." *Id.*, PAGEID#133. As alleged by Jones, Hay is a white woman, PGO Council 12 President[5], and a Court Review Specialist for MCDJFS.

On her first day of employment, Jones claims that when she arrived at the Haines Children's Center, which she refers to as the "MCCS," "… she was pulled to the side by a black MCCS supervisor" and warned to "watch out for" Hay, stating that she "…was a 'backstabber' … was rude and had a habit of talking crazy to her coworkers." *Id.*, PAGEID#103. Myers, the Human Resources ("H.R.") Coordinator at MCDJFS, also spoke with Jones on her first day of work and essentially told her the same thing and added that, if there were any problems with Hay, Jones should let her know. *Id.* Two days later, Jones met Mundy, a supervisor of Mandated Services, who told her that Hay would be her trainer for her position, which Jones alleges was "Court Review Specialist, Rank 1."

On Jones's first day of job training, Hay told her "to stay away from the black girls in the building because they did not like Hay and she did not want Jones to get involved with them and did not want them in her area." *Id.*, PAGEID#105. Hay also told Jones "not to go upstairs to get the mail," because

---

[5] Plaintiff's Amended Complaint alleges that the PGO is "the [U]nion for Montgomery County Department of Job and Family Services, Children Services Division."

Diane Williams, a black employee, was there and Hay did not like her and did not want Jones talking to Diane Williams. *Id.*

The Complaint alleges that when Jones asked Hay questions, Hay would shout belittling remarks at her. Hay told Jones not to help people who walked up to the desk asking for help, because those employees should send an email asking for assistance. *Id.*, PAGEID##106-107. Jones alleged, however, that white co-employees could walk up to the desk for help, but if the co-workers were black, Hay would "run them off," tell them that Jones was in training and that they should send Hay an email if they needed help. *Id.*, PAGEID#107. Jones also alleged that during this period of training, because she was dependent on Hay, intimidated by her and knew of her "power in the department and division ….," Jones began to develop "severe anxiety" when she was requested to do something by Hay. *Id.* As a result of "the severe stress she was under" during the training period, she began suffering from skin peeling from her hands and a "strange red rash." Jones showed her hands to Mundy, telling her that this condition "was being treated as stress related." *Id.* According to the Complaint, every statement that Jones made to Mundy concerning Hay was met with the response: "I don't know why anyone hasn't bought [brought legal] action about this[;] that's why I keep my attorney on speed dial." *Id.*, PAGEID#108.

In July 2017, Hay went on medical leave. *Id.*, PAGEID##108 and 109. During this time, Jones discovered that most of the alleged errors in her work, that Hay was including in Jones's official work record, were simply typographical errors.

6

*Id.*, PAGEID##109-110. She informed Mundy that the high number of her typographical errors was due to the distractions and events caused by Hay, and being in the small cubicles and under extreme stress when in Hay's presence. *Id.,* PAGEID#110. Jones also has alleged that before Hay went on medical leave, she failed to tell her how to log into and add data to a system ("SACWIS") that Hay had designed to track Jones's work completion. When Good, Assistant Director of MCDJFS, looked at the system to check on Jones's progress, there was nothing to show how much work she had done. This prevented Good from tracking Jones's progress and work performance. *Id.*, PAGEID#108.

When Hay returned to work, she extended Jones's probationary period and Jones's rash immediately returned. *Id.,* PAGEID#111. Hay reviewed the entries into the SACWIS system that Jones and two other employees had made. One of the three employees, Jane Kidwell, was white and Jones alleges that Hay made "small, subtle marks" on Kidwell's work, but that when Hay reviewed Jones's work, Hay made "big bright marks on the paper with a hot pink marker." *Id.*, PAGEID#112. Hay made even bigger marks on the work of Clarissa Gresham, a black employee, and Hay told Mundy that she would need to correct all of Gresham's work. *Id.*

With respect to SACWIS, Jones has alleged that she realized that it was Hay who caused, and in some instances created, her errors. *Id.*, PAGEID#114. Hay did not train her on how entries on the different documents were to be made and, instead, would give her conflicting instructions about making entries into the

SACWIS system. *Id.*, PAGEID#114. When Jones followed Hay's instructions and inputted information into SACWIS, Hay would then mark it wrong on the document and would give it back to her. At some point, Hay would then give the document to Mundy, supervisor of Mandated Services, who reviewed it and returned it to Jones "with a note that said either Mundy was disappointed in all the errors or that Jones was improving." *Id.*, PAGEID#115. The cycle would continue with Jones re-entering information as Hay instructed, Hay marking it "wrong" and giving it to Mundy, who then returned it to Jones to correct. Doc. #34, PAGEIE#572-573. The Complaint alleges that when Jones would ask Hay a question about how to enter information into SACWIS, "Hay would yell 'I told you three times how to do that' but never was Jones told why it must be done that way." *Id.*, PAGEID#118. Jones characterizes Hay's conduct as "obnoxious and loud." *Id.* During her training period, a white woman heard Hay's comments to Jones, and asked Plaintiff "Why do you let Jane [Hay] berate you that way." Doc. #34, PAGEID#576.

Jones's work environment "continued to get progressively worse during the close of [2016]." *Id.*, PAGEID#106. When Jones returned from lunch, Hay would run to her cubicle, sniff Jones and tell her to remove her sunglasses. *Id.* On one occasion, Hay asked Jones why her eyes were red and when told that it was due to allergies, Hay began to tell her "what would happen if a person were presumed to be high at work" and said it in a way that she felt threatened. *Id.*

At one point, "Hay said that because she was not invited to ... the social functions that the black women employees would have throughout the year, . . . she (Hay) would not do anything to help any of 'those heifers.'" *Id.,* PAGEID#122; Doc. #34, PAGEID#576. Hay would also walk around the building and talk loudly "about black women's attire." Doc. #34, PAGEID#576. Jones also alleges that "black male employees steered clear" of Hay because she had made "sexual advances towards a black male employee and when he reciprocated," she filed a "sexual harassment lawsuit" and got him fired. *Id.,* PAGEID#577.

The Complaint alleges that in December 2016, Hay told Mundy that Jones was making too many errors "and that she did not think that Jones could grasp the work." Doc. #2, PAGEID#120. Around this time, Jones told Mundy that Hay was sabotaging her work by changing it and gave Mundy documents that allegedly exposed Hay's sabotage.

Jones has alleged that Hay would not allow her to make it through her probationary period and that "there was only enough work for two individuals in that division in the position of Court Review Specialist[,] Rank 1, and [that]Jones would not be one of those individuals." *Id.,* PAGEID#126. Jones claims that in January 2017, she "discovered that Hay had [done] the same exact thing to two other black females ... training on [the] SACWIS system. One [of the individuals] quit and the other was terminated...." *Id.,* PAGEID126. The Complaint alleges that towards the end of Jones's probationary period, she learned that the position in which she was working as a probationary employee had been reclassified, the

"pay scale raised" and that a white employee (Shannon Kidwell) from another department was "returning" to the job now that it was reclassified. Jones claims that "her only purpose was to serve as a temp until political moves were made to move a properly trained individual into the position that was sought by Plaintiff." *Id.*, PAGEID#124. Doc. #34, PAGEID##571 and 575. 571

Jones went to various people at MCDJFS for assistance regarding the problems she was having with Hay. These people included Mundy, along with Debra Robinson, the Vice President of the Union, and Myers, the H.R. Coordinator. Jones also alleges that she spoke with Ronald Church, a Regional Supervisor of the PGO. Jones alleges in her Complaint that she later told Myers to leave the issues concerning Hay alone. Jones then went to see Shaw, the District 2 Manager and Supervisor, and explained to her the pressure she was under due to Hay. Jones showed Shaw the rash on her hands and told Shaw that it came from the stress of having to work with Hay.  Additionally, Jones told her that Hay has created a "hostile work environment" and that Mundy, Hay's supervisor, failed to take remedial action.  Jones told Shaw that she was being improperly trained, that she was given nothing to review or study and that all the information came directly from Hay who, by that time, "had racial bias on full display." Shaw dismissed Jones's "accusations and sent her back to work." *Id.*, PAGEID##131-32.

On Jones's last day of employment at MCDJFS, the third week of January 2017, Shaw came to her, after everyone had left for the day, and asked her to come to H. R. *Id.*, PAGEID#133. Jones did so and met with a "tribunal" which

10

included Good and Shaw. *Id.*, PAGEID#134. Jones was escorted back to her work area and told to gather her belongings. *Id.* She was not allowed to keep the work she had developed to help her make entries into SACWIS. According to Jones, "[T]he written appraisals submitted by Defendant Mundy and Hay were used to place Plaintiff on Administrative Leave with pay…" *Id.*, PAGEID#135. Jones has also alleged that MCDJFS retaliated against her for going to the Union. *Id.*, PAGEID#136. She was terminated on February 3, 2017. Doc. #38, PAGEID#655.

Jones filed for and received unemployment compensation. She filed a discrimination charge with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") on March 15, 2017. *Id.* In her charge, Plaintiff stated that she was discriminated against due to "Race/Color African American" and age[,] and was the subject of retaliation for having gone to the union. She also claimed a hostile work environment and that she was discharged. Doc. # 38, PAGEID#655. Her charge was dismissed by the OCRC on September 28, 2017, Doc. #38, PAGIED# 656-657, and she received her right to sue letter from the EEOC dated November 3, 2017. Doc. #38, PAGEID#654.

## II. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendations to which an objection is made. The Court may accept, reject, or modify, in whole or in part, the

magistrate judge's findings, may receive further evidence, or recommit the matter to the magistrate judge with instructions. *Id. See also* Fed. R. Civ. P. 72 (b)(3).

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the

plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to a plausible inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

## III. Report and Recommendations, Doc. #57

Before analyzing the objections filed by the Montgomery County Defendants and Hay, Doc. #59, and the separate objections filed by Hay, Doc. #58, the Court will review the recommendations made by the Magistrate Judge in the Report and Recommendations, Doc. #57.

### A. Plaintiff's § 1983 claims and MCDJFS

The Report and Recommendations, Doc. #57, "concludes that (1) Plaintiff's § 1983 claims are no longer part of this case." *Id.*, PAGEID##777 and 783. Because Plaintiff's § 1983 claim was not pled or incorporated into the Amended Complaint, Doc. #34, *Drake v. City of Detroit, Mich.*, 266 F. App'x 444, 448 (6th Cir. 2008) (an amended complaint supercedes a prior complaint), the Court adopts this recommendation. The Court also adopts the recommendation of the Magistrate

13

Judge that the MCDJFS, the alleged employer of Plaintiff and Defendants, must be dismissed because it is not *sui juris*.[6]  *Id.*, PAGEID#783.

### B.  Title VII Claims of National Origin and Racial Discrimination

With respect to Count I of the Amended Complaint, the Magistrate Judge recommends that Plaintiff's Title VII claim "based on national origin discrimination" should be dismissed because Plaintiff failed to exhaust her administrative remedies. Doc. #57, PAGEID#784.  Federal courts can hear only Title VII claims that have been asserted in a charge made to the Ohio Civil Rights Commission, the Equal Employment Opportunity Commission, or claims that "can be reasonably expected to grow out of" such administrative charges, *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001).  Because no such charge of national origin discrimination was made by Plaintiff to the administrative bodies, nor is any such charge expected to grow out of what is alleged, the Court adopts the Magistrate Judge's recommendation.

Based on the allegations of the Amended Complaint, the Magistrate Judge further recommends that Counts I and II should be classified as Title VII claims based on discrimination due to race as Plaintiff has alleged, and not "national

---

[6] As a department or agency within the Montgomery County government, the MCDJFS lacks the capacity to be sued in its own name and, as such, is "*sui juris*."

origin." Doc. #57, PAGEID#782. The Court will analyze this recommendation below.

### 1. Count I, Race-Based Hostile Work Environment

Count I of the Amended Complaint alleges a Title VII claim for a hostile work environment based on national origin. The Magistrate Judge indicated that this was, in reality, a claim for a hostile work environment based upon race. It is well-established, under Title VII, that an employee has a cause of action when an employer maintains a hostile work environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("requiring people to work in a discriminatorily hostile or abusive environment" violates Title VII). Evidence of a hostile work environment exists when "the workplace is permeated with 'discriminatory intimidation, ridicule and insult ...'" *Harris*, 510 U.S. at 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 106 S.Ct. 2399, 2405).

To establish the existence of a hostile work environment under Title VII, a plaintiff must show that: "(1) she is a member of a protected class; (2) she was subjected to unwelcomed racial harassment; (3) the harassment was race[-] based; (4) the harassment unreasonably interfered with her work performance by creating an environment that was intimidating, hostile, or offensive; and (5) [the] employer [is liable]." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007).

Plaintiff's Amended Complaint alleges that on her first day of job training, Hay, a white woman, told her "to stay away from the black girls in the building

because they did not like Hay and she did not want Jones to get involved with them and did not want them in her area." Doc. #2, PAGEID#105. Plaintiff's Amended Complaint also alleges that Hay would assist white employees who needed help but if a black co-employee sought help from Plaintiff, Hay would "run them off" and tell them that Jones was in training and that they should send Hay an email if they needed help, *Id.*, PAGEID##106-107. Plaintiff also alleges that Hay referred to Plaintiff's black co-workers as "heifers," and that while walking through the office, commented loudly about the attire of the black co-workers. The Amended Complaint also alleges that Hay would berate Plaintiff in front of others and that she was sabotaging Plaintiff's work by changing it in the SACWIS system after she had correctly entered it. Plaintiff complained about Hay to Mundy, Hay's supervisor, and Shaw, a manager and supervisor.

The Magistrate Judge has properly construed the allegations in the Amended Complaint to be those of a racially hostile work environment under Title VII. Accordingly, the Court adopts the recommendation that Count I should be reclassified to allege a hostile work environment based on race and not national origin.

### 2. Count II, Retaliation Based on Plaintiff's Claims of Racial Discrimination and Harassment

Plaintiff's second claim in her Amended Complaint alleges that she "engaged in protected activity when she complained about discrimination and harassment based on national origin" and that "[I]n retaliation for" her

16

complaints, "she was unjustly terminated from her position." Doc. #34, PAGEID#591. In the Report and Recommendation, the Magistrate Judge indicated that based upon the allegations of the Amended Complaint, Count II was a claim for retaliation based on Plaintiff's complaints of racial discrimination and harassment. To state a claim of retaliation under Title VII, Plaintiff must allege that: (1) she acted in a manner protected by Title VII; (2) Defendants knew of that exercise of protected activity; (3) Defendants subsequently took an adverse action against Plaintiff; and (4) the adverse action had a causal connection to the protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 126 S. Ct. 2405, 2415 (2006).

A plaintiff's burden to establish a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context. *Id.* Any action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination" is a materially adverse employment action in the retaliation context. *Id.*

Plaintiff's Title VII retaliatory conduct claim consists of alleging that she complained about Hay to her union representative, Debra Robinson, and told Shaw that Hay had created a "hostile work environment." Plaintiff further alleges that she told Shaw that she, Plaintiff, had complained to Hay's supervisor, Mundy, but that she took no action. Allegedly Shaw "dismissed the Plaintiff's accusations and sent [her]back to work." Doc. #34, PAGEID#587. Approximately one week later, Shaw, along with Good and a third person from H.R., met with Plaintiff and

17

placed her on administrative leave. Plaintiff's Amended Complaint alleges that she was ultimately terminated by MCJFS "for attempting to bring complaints against the President of the Union[Hay]. . ." and "[I]n retaliation for [her]complaints to the Union representative[Debra Robinson]." Doc. #34, PAGEID##589 and 591.

The Magistrate Judge has properly construed Count II of the Amended Complaint to be a Title VII claim of retaliation based on Plaintiff's complaints of racial discrimination and harassment. Accordingly, the Court adopts the recommendation of the Magistrate Judge that Count II should be reclassified to allege a Title VII claim of retaliation based on race and not national origin.

## C. Individual Liability Claims Against Defendants Hay, Good and Shaw

The Amended Complaint alleges individual liability against Hay, Good and Shaw. The Magistrate Judge has recommended that Plaintiff's Title VII "claims against Defendants in their individual capacities should be dismissed." Doc. #57, PAGEID##778 and 783-84. As explained in the Report and Recommendations, "Plaintiff sets forth no factual allegations in her Amended Complaint upon which the Court could plausibly conclude that any of the individual Defendants are 'employers' for purposes of Title VII."

Under Title VII, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such person." 42 U.S.C. § 2000e(b). Although Title VII does not define "agent,"

18

the Court of Appeals has interpreted it to mean "an individual who 'serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment.'" *Wathen v. General Electric*, 115 F.3d 400, 405 (6th Cir.1997)) (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir.1994), abrogated on other grounds by *Carter v. Toyota Tsusho America, Inc.*, 529 Fed Appx. 601(6th Cir. 2013)). The Sixth Circuit unambiguously holds that no personal liability exists under Title VII unless the individual employee/supervisor qualifies as an employer. *Little v. BP Exploration & Oil Co.* 265 F.3d 357, 362 (6th Cir.2001)("The law in this Circuit is clear that a supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII"); *Wathen*, 115 F.3d at 404-05 (6th Cir. 1997).

Plaintiff's Amended Complaint, however, alleges a "cat's paw" theory of liability as to Hay. According to the Amended Complaint, Hay, a "co-worker" and her "trainer," "sabotaged" Plaintiff's work by giving her incorrect instructions as to how to input information into SACWIS. Hay would mark Plaintiff's work wrong, give it back to her and then give the document to Mundy, the supervisor of Mandated Services, who reviewed it and returned it to Jones. "The cycle would continue with Jones re-entering information as Hay instructed, Hay marking it 'wrong' and giving it to Mundy, who then returned it to Jones to correct." Doc. #34, PAGEIE#572-573. The actions and biases of the intermediate employee who engages in conduct that sabotages the performance of a co-worker are attributed

19

to the employer. *Staub v. Proctor Hosp.*, 562 U.S. 411,131 S. Ct. 1186 (2011).[7]
*Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 586 n. 5 (6th Cir.2009) ("The 'cat's paw' theory refers to a situation in which a biased subordinate, who lacks decision[-]making power, influences the unbiased decisionmaker to make an adverse ... decision, thereby hiding the subordinate's discriminatory intent.) *Id., see also*, *Arendale v. City of Memphis*, 519 F.3d 587, 604 n. 13 (6th Cir.2008)(quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir.1998) ("[T]he discriminatory remarks of those who may have influenced the decision not to reassign the plaintiff to other positions in the company may be relevant when the plaintiff challenges the motive behind that decision.")). Even if such a theory is applicable, liability would attach only to the employer and not to the intermediate employee.

In this case, the Amended Complaint does not plead sufficient facts to find that Hay, Good or Shaw are employers or "agents" of an employer under Title VII so that they are liable in individual capacities. Moreover, although Plaintiff has alleged a cat's paw theory of liability against Hay due to her alleged sabotaging of Plaintiff's work, this theory of liability attaches to the employer and does not create individual liability.

---

[7] *Id.*, n.1 for a fuller explanation of the term, "cat's paw."

Accordingly, the Court adopts the recommendation that the Amended Complaint fails to plead sufficient facts to establish liability against Hay, Good or Shaw in their individual capacities.

## IV. Joinder of Plaintiff's Employer

Although no individual liability exists under Title VII unless an employee or supervisor qualifies as an employer, vicarious liability exists for an employer for an actionable hostile environment created by a supervisor with "immediate or successively higher authority" over the allegedly victimized employee. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998). As such, employer liability exists for a hostile work environment claim without establishing that the employer is negligent or otherwise at fault for the supervisor's actions. *Burlington Industries, Inc.*, 524 U.S. at 765.

The Court has adopted the recommendation that MCDJFS, the entity that Plaintiff alleges is her employer, is not *sui juris*. However, the Court, like the Magistrate Judge, agrees that "[I]t is incumbent on the court to take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds," *Friedman v. Campbell*, No. 98-6728, 199 WL 1045281, at *1 (6th Cir. Nov. 8, 1999), and to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all

reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh,* 487 F.3d at 476).

Because Plaintiff's Amended Complaint evinces a clear intent to sue her employer, the Court will strike MCDJFS as Plaintiff's alleged employer in the Amended Complaint and substitute Montgomery County as the employer and a Defendant in this litigation.

## V. Objections of the Montgomery County Defendants and Defendant Hay as an Employee of MCDJFS, Doc. #59[8]

The Montgomery County Defendants and Hay have asserted two objections to the Report and Recommendations: (1) the "official capacity" claims alleged against them under Title VII should be dismissed; and (2) Myers should be dismissed from this litigation. The Court will address each objection separately.

### A. First Objection – Title VII Race-Based Hostile Work Environment and Retaliation Claims Alleged Against Defendants Hay, Good, Shaw, Mundy and Myers in Their Official Capacities Should Remain Pending

The Magistrate Judge has recommended that Plaintiff's Title VII race-based hostile work environment and retaliation claims asserted against Defendants Hay, Good, Shaw, Mundy, and Myers in their official capacities should remain pending. In their first objection, the Montgomery County Defendants and Defendant Hay, as an employee of the MCDJFS, assert that although the Magistrate Judge properly

---

[8] The objections are filed by the MCDJFS, the Montgomery County Defendants and Hay in her capacity as an employee of MCDJFS, Doc. #59.

dismissed the Title VII claims alleged against them in their "individual capacities," the Report and Recommendations incorrectly failed to dismiss Plaintiff's Title VII claims against them in their "official capacities."

Plaintiff's Amended Complaint has alleged that Defendants Hay, Good, Myers and Shaw are liable in their "official capacities" for the Title VII race-based hostile work environment and retaliation claims. An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 105 S.Ct. 3099, 3105 (1985) (citation omitted). A claim against the defendant in his official capacity is not a suit against the official personally, for the real party in interest is the entity. *Id.*[9]

The Magistrate Judge recommends that the claims "against Hay, Good, Shaw, Mundy[,] and Myers in their official capacities" should remain pending. Doc. #57, PAGEID#784. The Report and Recommendations states that these claims should remain since the prayer for relief "seeks compensatory damages against MCDJFS only, the undersigned liberally construes the pleadings -- as the Court is required to do -- and finds that Plaintiff's claims against the individually named Defendants are, in fact, Title VII claims asserted against them in their

---

[9] Plaintiff has not alleged that Hay, Good, Myers or Shaw had significant control over hiring, firing and working conditions such that they could be the *alter ego* of the employer. *Little v. BP Exploration & Oil Co.* 265 F.3d 357 at 362 n. 2 (6th Cir.2001)("While the law is clear that a supervisor cannot be held liable in his or her individual capacity for violations of Title VII, there is support for the proposition that a supervisor may be held liable in his or her official capacity upon a showing that he or she could be considered the "alter ego" of the employer.")

official capacities, i.e., against their employer." Doc. #57, PAGEID#778. The
Magistrate Judge cites to *Wilson v. Nutt*, No. 96-6683, 1998 WL 30813, at *3 (6th
Cir. Jan. 22, 1998) ("When a person says he [or she] is suing a public official in
his [or her] 'official capacity,' that term is being utilized as shorthand for the
government agency to which the plaintiff is looking for recovery.") Doc. #57,
PAGEID#778.

Because an official capacity suit is treated as a suit against the entity,
*Kentucky v. Graham*, 473 U.S. at 166, Plaintiff's claims against Hay, Good, Myers
and Shaw in their official capacities are unnecessary now that Montgomery
County, Plaintiff's employer, is joined as a Defendant. Accordingly, the Court
rejects the recommendation that Title VII liability exists for Hay, Good, Myers and
Shaw in their official capacities and sustains the first objection of the
Montgomery County Defendants and Hay.

### B. Second Objection – Plaintiff's Title VII Race-Based Hostile Work Environment and Retaliation Claims Alleged Against Defendant Myers in Her Official Capacity

Although the Magistrate Judge recommended that Plaintiff's Title VII race-
based discrimination and retaliation claims remain pending against Defendants
Hay, Good, Shaw, Mundy and Myers in their official capacities, the Court has
joined Plaintiff's employer, Montgomery County, to this lawsuit and has rejected
the Magistrate Judge's recommendation. The second objection of the
Montgomery County Defendants and Hay is that the Magistrate Judge incorrectly

included Myers as a Defendant despite Plaintiff's statement in her prayer for relief that this Defendant be dismissed.  This objection requests dismissal of Defendant Myers.

> (g)Plaintiff further request[s] this Honorable Court to correct the caption by replacing the name Ronald Church with John Doe until discovery can be had for this individual[']s correct name.  Plaintiff further moves the Court to dismiss the action against Defendant Deansai Myers and remove her name from the caption.

Doc. #34, PAGEID#594.

In sustaining the first objection of the Montgomery County Defendants and Hay, the Court has also, in effect, sustained the second objection of these Defendants. Accordingly, Myers is dismissed as a Defendant.

Additionally, although not part of these objections, Defendant Ronald Church is named as a Defendant in the Amended Complaint in his individual and official capacity. Doc. #34, PAGEID#PAGEID#567; Doc. #2, PAGEID#92.  In her prayer for relief, however, Plaintiff requests that this Court "correct the caption by replacing the name Ronald Church with John Doe until discovery can be had for this individual's correct name. Accordingly, Defendant Ronald Church is dismissed from this lawsuit and John Doe is substituted as a defendant.

## VI. Separate Objections of Hay, Doc. #58[10]

Defendant Hay asserts three separate, but related, objections to the Report and Recommendations: (1) Plaintiff's Title VII claims were not timely filed under the relation back doctrine; (2) the Report and Recommendations did not consider whether there was "good cause" to excuse Plaintiff's noncompliance with the 90-day limitations period for filing Title VII claims of race discrimination and retaliation; and (3) the relation back doctrine did not apply under the circumstances of this case.

The essence of Hay's argument is that Plaintiff's timely filed EEOC charge was for "race/color," age, retaliation and hostile work environment. Because her right to sue letter was dated November 3, 2017, any complaint alleging Title VII claims had to be filed within 90 days or on or before February 1, 2018.[11] Because the failure to file within the ninety-days is evaluated in the same manner as a failure to file within a statute of limitations, *Truitt v County of Wayne*, 148 F.3d 644, 646-647 (6th Cir. 1998), Plaintiff's Title VII claims, which she asserts for the

---

[10] In addition to Hay being sued in her individual capacity and in her "official capacity as a Court Review Specialist, Rank 1" for the MCDJFS, which the Court has previously addressed in this Decision and Entry, she is also sued in her "official capacity as President of the PGO Council 12." Doc. #2, PAGEID#91; Doc. #34, PAGEID#567. Although not expressly stated in the Report and Recommendations, Hay is not liable in this capacity under Title VII since no employment relationship was pled.

[11] Hay notes that Plaintiff did, in fact, timely file her Complaint alleging violations under 41 U.S.C. § 1981a, 42 U.S.C. § 1983 and for intentional infliction of emotional distress, on February 1, 2018, albeit not for complaints alleged in the EEOC complaint of discrimination based upon "race/color," age, retaliation and hostile work environment.

first time in her Amended Complaint, are barred unless they relate back to the filing of her Complaint.

Fed. R. Civ. P. 15(c)(1)(B), however, permits the relation back of Plaintiff's Amended Complaint to the date of the filing of her initial Complaint "when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading." Fed. R. Civ. P. 15(c)(1). The Report and Recommendations cited *Caimona v. Ohio Civil Serv. Employees Ass'n*, No. 4:18CV785, 2018 WL 6386023, at *3 (N.D. Ohio Dec. 6, 2018) (citing *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 548). Although Hay is correct that *Lockhart* pertains to Rule 15(c)(1)(C), this Court agrees with the Magistrate Judge that the relation back of Plaintiff's Title VII claims to the date of the filing of the initial Complaint is permissible in this case.

> Rule 15(c) is "'based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence.'" *U.S. ex rel Bledsoe v. Comm Health Sys., Inc.*, 501 F.3d 493, 516 (6th Cir. 207) (quoting *Brown v. Shaner*, 172 F.3d 927, 932 (6th Cir.1999)).

*Hall v. Spencer Cty., Ky.*, 583 F.3d 930, 934 (6th Cir. 2009)

In short, as stated by the Sixth Circuit, the issue is whether the party asserting the statute of limitations defense has been put on notice "that he could be called to answer for the allegations in the amended pleading." *Bledsoe*, 501 F.3d at 516. Based on the allegations in both the initial and Amended Complaint,

there is no doubt that all Defendants were on notice that the Title VII allegations in the Amended Complaint related to prior allegations of racial discrimination and retaliation which were alleged in the initial Complaint. Therefore, Hay's first objection is overruled.

Hay's second objection is whether "good cause" has been established "to excuse Plaintiff's noncompliance with the 90-day limitations period for filing Title VII claims of race discrimination and retaliation." In support of this objection, Hay cites *Lockhart*, 531 F. App'x at 549. *Lockhart*, however, involved not only the relation back of an amended complaint to add a party and an analysis of Rule 15(c)(1)(B), but also service of that new party under Fed. R. Civ. P. 4(m). Specifically, the plaintiff's Title VII claim had to be served on the added party and "served within 120 days after the [initial] complaint is filed ... [or] the plaintiff shows good cause for the failure [to serve the added party within 120 days]," *See* Fed. R. Civ. P. 4(m). *Id.* at 548. There is no such requirement of a showing of "good cause" under Rule 15 (c)(1)(B). As such, Hay's second objection is overruled.

Finally, Hay argues that Plaintiff is required to satisfy "[B]oth (A) and (B)" of Fed. R. Civ. P 15 (c)(1) for the relation back doctrine to apply. Doc. #58, PAGEID#789. The Court does not agree. Nothing in the language of Fed. R. Civ. P. 15(c)(1), or in the case law interpreting same, requires both sections (A) and (B) to be satisfied before relation back can occur.

> Rule 15(c)provides two methods by which an amendment alleging a
> new or different claim or defense may be allowed to relate back to
> the filing of the original complaint and thus avoid an otherwise
> applicable statute of limitations. The first method appears in Rule
> 15(c)(1)(A), which was added to the rule in 1991. . . The second
> means of determining when an amendment may relate back to the
> date of the original pleading appears in Rule 15 (c)(1)(B).

6A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1497, at 76 (2010).

Hay's third objection is overruled.

## VII. Conclusion

For the reasons set forth above, the Court ADOPTS, in part, and REJECTS, in part, the Report and Recommendations, Doc. #57, SUSTAINS the Objections of the Montgomery County Defendants and Hay, Doc. #59, OVERRULES the separate Objections of Hay, Doc. #58, SUSTAINS, the Motion to Dismiss of the Montgomery County Defendants and Hay, Doc. #37, and OVERRULES IN PART AND SUSTAINS IN PART the separate Motion to Dismiss of Hay, Doc. #38.[12]

MCDJFS is stricken from the Amended Complaint as Plaintiff's employer and Montgomery County is substituted as the employer and a Defendant in this litigation.

Defendant, Deansai Myers, is dismissed as a Defendant.

_____

[12] Defendant Hay's Motion to Dismiss, Doc. #38, is sustained as to the dismissal of claims alleged against Hay individually, in her official capacity or as President of the PGO under 42 U.S.C. §§ 1981 and 1983. Plaintiff's claim of intentional infliction of emotional distress, set forth in the initial Complaint but not in the Amended Complaint, is abandoned. The remainder of the Motion to Dismiss, Doc. #38, is overruled.

Defendant, Ronald Church, named in the prayer for relief, is dismissed and John Doe is substituted as a Defendant.

As a result of this Decision and Entry, Plaintiff's Amended Complaint alleges Title VII claims of race-based hostile work environment in Count I and retaliation based on racial discrimination and harassment in Count II. The only Defendant in this litigation is Plaintiff's employer, Montgomery County.

Date: April 29, 2020

/s/ Walter H. Rice (tp - per Judge Rice authorization after his review)
WALTER H. RICE
UNITED STATES DISTRICT JUDGE